**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**


**CIVIL ACTION NO. 13-99-WOB-CJS**

**HAROLD BAKER**                                                                                    **PLAINTIFF**


**v.**                                        **REPORT AND RECOMMENDATION**


**CAROLYN W. COLVIN, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**


\* \* \* \* \* \* \* \* \*

Plaintiff Harold Baker brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying his application for disability insurance benefits and supplemental security income benefits under the Social Security Act. At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. As explained below, the ALJ erred in relying on the vocational expert's response to an inaccurate hypothetical question. It will therefore be **recommended** that the Commissioner's Motion for Summary Judgment (R. 14) be **denied,** Plaintiff's Motion for Summary Judgment (R. 13) be **granted in part,** and the matter be **remanded** for further proceedings.

I.       **STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app. 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. *Id.* Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was forty-one at the time of the ALJ's decision. (Administrative Record (A.R.) 33). While Plaintiff completed the sixth grade, he is illiterate. (A.R. 16-17, 22, 37-38). Plaintiff has past relevant employment as a lumber stacker and also performed odd jobs. (A.R. 33). Plaintiff testified that he has problems with lower back pain, numbness and pain in his knees and legs, neck pain which radiates into his arms, joint swelling in his hands, loss of grip, headaches, and an inability to read or write. (A.R. 34-39, 226).

Plaintiff filed an application for disability insurance benefits and supplemental security income on December 27, 2010, alleging disability beginning on December 23, 2010.[1] (A.R. 12).

---

[1]The ALJ reports Plaintiff filed a prior claim for supplemental security income on February 22, 1995, which was denied on September 27, 1996. (A.R. 12). Plaintiff did not appeal that decision. The ALJ noted that Plaintiff has not requested to reopen the prior decision and has not submitted new and material evidence that would be relevant to that time period. Thus, the ALJ found the prior decision final. Nevertheless, because Plaintiff did submit new evidence showing a material change in his back impairment, the ALJ found he could consider Plaintiff's claim anew. (A.R. 16) (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990)).

The claim was denied on December 27, 2010, and again upon reconsideration on June 3, 2011. (*Id.*). Plaintiff requested a hearing which was held before the ALJ on May 22, 2012. (*Id.* at 29-46). During this hearing, the ALJ heard testimony from Plaintiff and a vocational expert. (*Id.*). After receiving testimony and reviewing the record, the ALJ issued a written decision on June 5, 2012, finding Plaintiff was not disabled. (A.R. 12-24).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (Id.). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 23, 2010, the alleged onset date. (A.R. 14). At step two, the ALJ determined that Plaintiff had the following severe impairments: "lumbago; cervicalgia; scoliosis of the thoracic spine, with leg length discrepancy; osteoarthritis in multiple joints including lumbosacral spine; borderline intellectual functioning; and reading disorder." (*Id.*). At step three, the ALJ analyzed the Plaintiff's impairments, both physical and mental, and found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the applicable Federal Regulations. (A.R. 18).

At step four, the ALJ considered the evidence and determined that the Plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. §§ 404.156(c) and 416.967(c), subject to several limitations. (A.R. 19). Specifically, the ALJ found that Plaintiff has the functional capacity to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except can never climb ladders, ropes, scaffolds; can frequently stoop, crouch and crawl; can frequently handle and finger with both upper extremities; must avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; and is limited to simple one-to-two step procedures and can have only occasional contact with the public.

(*Id.*).  The ALJ heard testimony from an impartial vocational expert (VE) who stated that based on the RFC provided by the ALJ, Plaintiff could not perform any of his past relevant work.  (A.R. 22).  The ALJ proceeded to step five and adopted the VE's opinion that given Plaintiff's age, education, work experience and the RFC recited above, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including representative occupations such as assembler and laundry worker at the medium level of exertion, machine tender and production helper at the light level of exertion, and inspector and security monitor at the sedentary level of exertion.  (A.R. 22-23).  The ALJ agreed with the VE's assessment and ultimately determined that Plaintiff was not "disabled" for Social Security purposes.  (A.R. 24).

Plaintiff appealed the ALJ's decision to the Appeals Council.  (A.R. 4).  On August 12, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's June 5, 2012, decision denying Plaintiff benefits the final decision of the Commissioner.  (*Id.*).  On September 14, 2013, having duly exhausted his administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ erred as a matter of law in failing to find Plaintiff disabled under the Act.  (R. 1).  Plaintiff and the Commissioner have filed Motions for Summary Judgment.  (R. 13, 14).  Plaintiff's Motion does not challenge the ALJ's findings that his physical impairments were not disabling.  Instead, Plaintiff challenges that the ALJ erred at step three in failing to consider whether Plaintiff met or equaled Listing 12.05(C) and at step five when he relied on a VE's response to an inaccurate hypothetical question.  (R. 13).

III.    **ANALYSIS**

A.    **The ALJ did not commit reversible error in failing to discuss Listing 12.05(C)**

Plaintiff argues that the ALJ erred at step three of the five-step sequential process by failing to consider whether Plaintiff met or equaled Listing 12.05(C). (R.13-1, at 5). While the ALJ did not specifically discuss Listing 12.05(C), the regulations do not require him to address every listing as such a requirement would be impracticable. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (noting the regulations contain "a hundred or so listings"). "[T]he ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ. If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id*. (*citing Abbott*, 905 F.2d at 925).

Here, Plaintiff did not raise Listing 12.05(C) for consideration before the ALJ. Thus, in order to necessitate a remand for failing to properly consider a listing, Plaintiff must show that the record "raises a substantial question as to whether [he] could qualify as disabled" under Listing 12.05(C). *See id.*

In making this determination, the Court is mindful that a plaintiff carries the burden of showing that his impairment meets or equals the specific criteria of a listed impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "For a claimant to show that his impairment matches a listing, he must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis original); *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925, 416.926. Indeed, a plaintiff's failure to produce evidence to support all of the requirements of a particular listing provides substantial evidence to support a finding that a plaintiff does not meet the listing. *See Elam ex. rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing *Hale v. Sec'y of*

*Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)). An impairment is medically

equivalent to a listing if it is "at least equal in severity and duration to the criteria" of the listing. *See*

20 C.F.R. §§ 404.1526(a) and 416.926.

> Listing 12.05(C) provides in pertinent part as follows:
>
> Mental retardation refers to significantly subaverage general intellectual functioning
> with deficits in adaptive functioning initially manifested during the developmental
> period; i.e., the evidence demonstrates or supports the onset of the impairment before
> age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B,
> C, or D are satisfied.
> . . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an additional and significant work-related
> limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff has failed to establish that the record raises a substantial question that his

impairments met or equaled Listing 12.05(C) as he has failed to point to any documentary evidence

that his impairments met or equaled the diagnostic description in the introductory paragraph of

Listing 12.05: "onset of the 'significantly subaverage general intellectual functioning with deficits

in adaptive functioning' before age 22." *Foster*, 279 F.3d at 354-55. In *Foster*, the Sixth Circuit

discussed the criteria for meeting Listing 12.05. *Id.* at 348. There, the Court held that the claimant

had not produced evidence to support the requirement of the introductory section of Listing 12.05(C)

because none of her testing or evaluation occurred during the developmental period. *Foster*, 279

F.3d at 354-55. Instead, the evidence established that claimant was already in her forties when she

was tested, and "the only evidence in the record pertaining to this issue is that [claimant] left school

after completing the ninth grade," and there was no evidence of the onset of deficits in adaptive

functioning prior to age 22. *Id.* Having failed to meet the introductory paragraph, the Sixth Circuit held that substantial evidence supported the ALJ's determination that the claimant did not meet the requirements of Listing 12.05(C).

In the case at bar, Plaintiff attempts to demonstrate he meets the requirements of the introductory paragraph of Listing 12.05(C) by pointing to his testimony that he only went to school through the sixth grade and was in special education classes. (R.13-1, at 6; A.R. 33). Even if this were sufficient to show onset of significantly subaverage general intellectual functioning prior to age 22, Plaintiff must also point to evidence of record that he had adaptive functioning deficits during his developmental period. *See Peterson v. Comm'r of Soc. Sec.,* No. 13-5814, 2014 WL 223655, at *7 (6th Cir. Jan. 21, 2014). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007). In *Peterson*, the Sixth Circuit held that "neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two." *Peterson*, 2014 WL 223655, at *7 (citing *Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (holding that a claimant's eighth grade education with a history of special education classes did not establish deficits in adaptive functioning prior to age 22)).

This is the same type of evidence Plaintiff points to here: limited education with history of special education classes. Plaintiff does not identify any record evidence that would establish deficits in adaptive functioning prior to age 22. Thus, Plaintiff has not demonstrated a substantial question that he could meet or equal the requirements of the introductory paragraph of Listing 12.05.

Accordingly, Plaintiff has not pointed to evidence of record raising a "substantial question" that he meets **all** the requirements of Listing 12.05(C); thus the ALJ did not commit reversible error in failing to discuss the listing. *See Sheeks*, 544 F. App'x at 641-42.

**B.     The ALJ's hypothetical question did not accurately portray the Plaintiff's education**

Plaintiff argues that the ALJ erred at step five of the sequential analysis because he relied on the VE's response to an inaccurate hypothetical. (R. 13-1, at 7-8). Specifically, Plaintiff asserts that the ALJ should have included in the hypothetical question posed to the VE that Plaintiff would need oral instruction because of his illiteracy.

The Regulations allow the ALJ to rely on the testimony of a VE at step five to determine whether the plaintiff is able to perform any work. 20 C.F.R. §§ 404.1566(e), and 416.966(e). The VE's testimony, in response to the ALJ's hypothetical question, will be considered substantial evidence "only if the [hypothetical] question accurately portrays [the plaintiff's] individual physical and mental impairments." *White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779, 785 (6th Cir. Feb. 24, 2009) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Although a hypothetical must accurately portray a plaintiff's impairments, an ALJ "is required to incorporate only those limitations that he accepts as credible." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

As explained above, the ALJ determined that Plaintiff's borderline intellectual functioning and reading disorder were severe impairments. (A.R. 14-18). In support of his findings, he relied on consulting psychological evaluator Pack's assessment. Specifically, the ALJ explained

The claimant reported that he attended school until the seventh grade. This statement is consistent with his prior statement that he had a sixth grade education (i.e. that he had attended school through the sixth grade–until it was time to enter the seventh grade). However, **on academic testing, the claimant scored at the first grade, third month level in reading and math**. Despite being a special education student, the **claimant reported that he has never been able to read and described a lifetime history of illiteracy**. Mr. Pack indicated that the test results showed the claimant functioned with significant verbal and nonverbal discrepancy, and that his overall history would argue against the formal diagnosis of mental retardation, but did suggest learning difficulties and illiteracy. . . . Mr. Pack ultimately reported a diagnosis on Axis I of a pain disorder by patient's report and on Axis II, of Borderline Intellectual Functioning and Reading Disorder.

(A.R. 17) (emphasis added). While the ALJ rejected Dr. Ford's ultimate RFC assessment and opinion of disability (*see* A.R. 22), he found Dr. Ford's mental testing was consistent with Mr. Pack's findings. Dr. Ford explained that Plaintiff was unable to spell the word "world" backwards, could recognize a few basic sight words and displayed no phonetic abilities. (*Id.* at 17-18). The ALJ concluded that the Plaintiff was illiterate but could communicate in English. (*Id.* at 22).

During the administrative hearing, the ALJ asked the VE if unskilled jobs existed for a person with the following limitations:

If you would assume a hypothetical individual of the claimant's age, education and work experience who is able to perform medium work, can never climb ladders, ropes, or scaffolds, can frequently stoop, crouch and crawl, can frequently handle and finger with both upper extremities, must avoid concentrated exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas, and the individual is limited to simple one to two-step procedures and can have only occasional contact with the public.

(A.R. 41). In response, the VE stated that jobs existed in significant numbers that such a person could perform, and he gave representative occupations of assembler or laundry worker at the medium level of exertion; machine tender or production helper at the light level of exertion; and inspector or a security monitor at the sedentary level of exertion. (A.R. 42).

Plaintiff argues that the hypothetical is inaccurate because it did not include a requirement that Plaintiff receive only oral instructions due to his illiteracy as Mr. Pack's analysis suggests.[2] (R.13-1, at 7). The Commissioner argues that the ALJ's reference to a hypothetical person with Plaintiff's education encompasses Plaintiff's illiteracy. (R. 14, at 10). The Commissioner also argues that the VE was aware of Plaintiff's illiteracy because he was present during Plaintiff's testimony and also from his review of the exhibits contained in Plaintiff's administrative record. (*Id.*). The record, however, does not support a finding that Plaintiff's illiteracy was considered in the VE's response.

First, while the ALJ was present during Plaintiff's testimony, Plaintiff merely testified that he stopped going to school in the seventh grade, had taken special education classes, and could not read a newspaper and understand it. (A.R. 37-38). In addition, while the VE stated he had reviewed exhibits provided to him, it is not clear what exhibits had been provided to the VE. (A.R. 40).

Moreover, the ALJ's general reference to a person with Plaintiff's education did not provide an accurate reflection of Plaintiff's educational background. Plaintiff testified that he completed the sixth grade, having left school in the seventh grade. (A.R. 37-38). The regulations provide that a person with a sixth grade education or less is generally considered to have marginal education. *See* 20 C.F.R. §§ 404.1564(b)(2), and 416.964(b)(2). "Illiteracy," however, is defined as the inability to read or write: "[w]e consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.

---

[2]Mr. Pack opined that "[Plaintiff's] ability to understand, retain, and follow instruction will be described as fair for a specific concrete information presented orally, but likely poor for written task." (A.R. 336). The ALJ noted that this statement is vague in that he failed to define the terms "fair" and "poor." (A.R. 21).

Generally, an illiterate person has had little or no formal schooling." *See* 20 C.F.R. §§ 404.1564(b)(1), and 416.964(b)(1). The regulations dictate that a numerical grade level is used to determine a person's educational abilities unless other evidence exists to contradict it. *See* 20 C.F.R. §§ 404.1564(b), and 416.964(b); *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450-51 (6th Cir. 1990) (A numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist.").

Here, as the Commissioner acknowledges, the record is replete with references to Plaintiff's illiteracy. (A.R. 40, 78, 105, 222, 225-26, 237, 325, 332-33, 353-54). In fact, the ALJ specifically found that "[t]he claimant is illiterate but is able to communicate in English." (A.R. 22). Yet, the details of Plaintiff's educational status were not included by the ALJ in his questioning of the VE. The ALJ asked the VE to assume the hypothetical individual had the same education as Plaintiff and included a limitation to simple one- and two-step procedures. (A.R. 41). The statement as presented, without further qualification, would have the VE assume a person of marginal education since Plaintiff completed the sixth grade. Thus, the hypothetical question did not provide the VE with sufficient information to appreciate Plaintiff's educational abilities and limitations. Consequently, the ALJ's reliance upon the VE's response thereto cannot provide the requisite substantial evidence to support his conclusion that Plaintiff is not disabled. The Court will not speculate on what impact appropriate educational information would have on the VE's opinion testimony concerning available jobs. On remand, the ALJ should pose a hypothetical question to the VE that accurately describes Plaintiff's education and the associated impact of his illiteracy on his functional capabilities.

## IV.    CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's reliance on the VE's response to an inaccurate hypothetical question renders the ALJ's decision not supported by substantial evidence and necessitates remand.

Accordingly, **IT IS RECOMMENDED** that:

1.      Defendant's Motion for Summary Judgment (R. 14) be **denied;**

2.      Plaintiff's Motion for Summary Judgment (R. 13) be **granted in part** as to Plaintiff's request for a reversal of the Commissioner's decision and remand, and **denied in part** to the extent Plaintiff requests a court-ordered award of benefits; and,

3.      that judgment be entered **reversing** the Commissioner's  Decision and **remanding** the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to reassess whether Plaintiff is disabled at step five of the sequential evaluation after obtaining the VE's response to a hypothetical question that accurately portrays Plaintiff's limitations, including those posed by his illiteracy.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 72(b).

Dated this 13th day of May, 2014.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**